EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
WILLIAM SAMUEL KNIGHT, acusado y apelante.

Núm. 14728.—*Sometido:* Diciembre 7, 1950.—*Resuelto:* Enero 31, 1951.

*Celestino Iriarte y Celestino Iriarte, Jr.,* abogados del apelante;
*Hon. Procurador General Vicente Géigel Polanco y J. Rivera
Barreras, Fiscal del Tribunal Supremo,* abogados de El Pue-
blo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tri-
bunal.

El fiscal del distrito de San Juan formuló acusación con-

tra William Samuel Knight por el delito de asesinato en primer grado, imputándole en ella haber dado muerte allá para el 28 de septiembre de 1948 y en Santurce a Pedro Cortés Chévere. Visto el juicio ante jurado éste rindió veredicto condenatorio de asesinato en segundo grado.

La teoría del fiscal, según fué expuesta a los señores del jurado, fué al efecto de que en la fecha indicada se celebraba un mitin del Partido Estadista en el sitio conocido por El Fanguito; que como a las seis de la tarde ya había personas alrededor de la tribuna y que a esa hora más o menos el acusado Knight en unión a otras tres personas, como medio de propaganda para atraer ciudadanos a la celebración del acto, portaban por la Avenida "E" de dicha barriada un cartelón o pasquín; que éste tenía dibujado una vaca con cara de mujer; que cuando ya estaban a poca distancia de la Carretera Militar, Pedro Cortés Chévere se situó frente a las personas que portaban el cartelón y les instó a que bajaran el mismo y suprimieran esa clase de propaganda; que Cortés Chévere agarró el cartelón, y al ser bajado el mismo el acusado le hizo varios disparos con una pistola que portaba; que al caer herido en la calle, Cortés Chévere sacó entonces un revólver e hizo contra el acusado y sus acompañantes, quienes en ese momento se daban a la fuga, varios disparos; que una señora en estado grávido que por allí estaba también salió herida en el vientre; y que la señora y la criatura se salvaron, pero no así Cortés Chévere, quien falleció pocas horas después a consecuencias de las heridas de bala recibidas. La teoría del acusado fué que actuó en defensa propia y que disparó su pistola contra Cortés Chévere porque éste trató de impedir que él y sus acompañantes continuaran exhibiendo el pasquín ya referido y porque mientras dos personas iban conduciendo el mismo surgió el occiso súbitamente ante ellos y les intimó para que entregaran el cartelón, disparando con el revólver que portaba; y que la actuación del acusado fué en defensa propia para evitar que el desacierto de Cortés Chévere pudiera matarlos o herirlos.

Ambas partes ofrecieron extensa prueba testifical en apoyo de sus respectivas teorías.

Finalizado el desfile de la prueba, después que el ministerio público y la defensa habían hecho al jurado sus informes respectivos y mientras la corte daba a éste las instrucciones de rigor, ocurrió casi a la terminación de éstas el incidente que pasamos a reseñar *verbatim* en seguida:

"Sr. Fiscal: Le íbamos a pedir a la Corte que dijera cuál es la ley con relación a la publicación de caricaturas.

"Sr. Juez: La ley con relación a la publicación de caricaturas en Puerto Rico es la siguiente: El artículo 253 del Código Penal . . .

"Lic. Ortiz Reyes: ¿Se está procesando al acusado William Samuel Knight por Asesinato en Segundo Grado o por un artículo determinado, o sea publicación de caricaturas?

"Hon. Juez: Es una cuestión de derecho. La prueba es al efecto de que el acusado y otros más llevaban un cartelón en el cual aparecía una caricatura; una persona distinta al acusado intervino para evitar que ese cartelón circulara por aquel sitio. Claro que es de lugar que los caballeros del Jurado sepan cuál es la ley con respecto a eso; si aquella persona que intervino podía hacerlo o no podía hacerlo.

*"Es claro que todo ciudadano tiene derecho, es más tiene la obligación que cuando, en su presencia, se está cometiendo o se intenta cometer un delito, tratar de evitar que ese delito se cometa.* (Bastardillas nuestras.)

"Vamos a ver qué dice el artículo 253 del Código Penal, que rige la publicación de caricaturas:

"Lic. Ortiz Reyes: Entonces nosotros vamos a tomar excepción de esa instrucción, si es que S. Sa. la agrega, y además que si S. Sa. da esa instrucción, diga también de la ley con respecto al grado de fuerza que debe ejercitarse, que puede ejercitarse para evitar que se cometa ese delito.

"Sr. Juez: La daré.

"El artículo 253 del Código Penal dice lo siguiente:

'PUBLICACIÓN DE RETRATOS, CARICATURAS.—Será ilícito publicar en cualquier periódico, cartel, hoja suelta, libro, publicación por entregas o suplemento a los mismos, el retrato de alguna persona viva residente en Puerto Rico, excepción hecha de los que ejercen cargos públicos, sin que medie el previo consenti-

114

,miento por escrito de dicha persona: *Disponiéndose*, que será lícito publicar el retrato de persona convicta de crimen. Será asimismo ilícito publicar en cualquier periódico, cartel, hoja suelta, libro, publicación por entregas, o suplemento a los mismos, cualquiera caricatura de persona residente en Puerto Rico, la cual ofendiere de algún modo en su honor, probidad, entereza, virtud, fama o móviles comerciales o políticos a la persona caricaturada, o tendiere a exponerle al odio, ridículo o desprecio público . . . .'

"De modo que si van a hacer una caricatura mía, como yo ejerzo un cargo público, no necesitan mi permiso previo para hacer esa publicación, disponiéndose que será lícito publicar el retrato de personas convictas de crimen. Será asimismo ilícito publicar en cualquier periódico, cartel, hoja suelta, libro, publicación por entregas o suplementos a los mismos, cualquier caricatura de persona residente en Puerto Rico, la cual ofendiere de algún modo en su honor, probidad, entereza, virtud, fama, móviles comerciales o políticos a la persona caricaturada, o tendiere a exponerle al odio, ridículo o desprecio público y constituirá eso 'misdemeanor'.

"*Claro que el grado de fuerza que se va a emplear en la prevención de la comisión de ese delito no es el mismo grado de fuerza que se puede emplear en la prevención de un caso, digamos de asesinato.* Si una persona tiene un revólver en las manos y le va a disparar a Juan, yo puedo adelantarme, disparar a esa persona y matarla para evitar que mate a Juan. *Si una persona está distribuyendo hojas sueltas donde me difaman a mí y a mí me ofenden y entiendo es un delito, no estoy justificado en entrarle a tiros a esa persona que está repartiendo esas hojas sueltas, sí agarrárselas, quitárselas y quizá hasta pelear a los puños con ella.*" (Bastardillas nuestras.)

Convicto como ya hemos dicho del delito de asesinato en segundo grado y sentenciado a sufrir de 10 a 30 años de presidio con trabajos forzados, Knight apeló. El segundo de los errores señalados por él para sostener su recurso es al efecto de que "la corte cometió error al instruir al jurado sobre el artículo 253 del Código Penal vigente", alegando al discutir el mismo, entre otras cosas, que "esa instrucción visiblemente trató de justificar la actuación provocativa de Pe-

dro Cortés Chévere", y que "el jurado pudo creer de acuerdo con la instrucción dádale por el tribunal que Pedro Cortés Chévere como todo ciudadano tenía no solamente derecho sino la obligación de tratar de quitarle el cartelón al acusado y sus compañeros porque estaban cometiendo un delito castigado por el artículo 253 del Código Penal."

Al discutir el anterior señalamiento de error el fiscal de esta corte insiste en que si bien la defensa manifestó que se anotaba una excepción si la corte procedía a instruir a los señores del jurado en relación con el citado artículo del Código Penal, ésta afirmó, no obstante, que si la corte daba esa instrucción debía también informar al jurado sobre el grado de fuerza que debería ejercitarse por una persona para evitar que se cometiera un delito, accediendo la corte a la petición de la defensa y procediendo entonces a dar la instrucción pertinente, sin que finalmente la defensa tomara excepción. Interpreta dicho funcionario que la actitud de la defensa implicó una renuncia a su objeción. No estamos de acuerdo. La objeción de la defensa a la instrucción que la corte se proponía dar fué clara. El hecho de que manifestara que si se daba tal instrucción ella debía informar igualmente al jurado con respecto al grado de fuerza que podía ejercitarse para evitar la comisión de un delito, no equivalió en forma alguna a una renuncia de su excepción, sino por el contrario al deseo del letrado de la defensa de proteger en cuanto fuere posible los derechos del acusado.

 Si bien el artículo 52 del Código Penal provee que "la persona contra quien se intente algún daño podrá oponer la necesaria resistencia: . . . (2) para impedir una ofensa contra su persona, o su familia, o algún miembro de ésta," y si bien el artículo 53 del mismo cuerpo legal dispone que: "Cualquier otra persona, en auxilio o defensa de la persona contra quien se intente algún daño, podrá oponer la necesaria resistencia para impedir la ofensa," esos artículos no tienen el alcance que la corte inferior le dió al instruir al jurado.

Innegable es que para impedir una ofensa contra su persona o contra cualquier miembro de su familia todo ser humano tiene derecho a oponer la necesaria resistencia, y que un extraño en auxilio de un semejante contra quien se intente algún daño puede asimismo oponer tal resistencia. Ello no significa, sin embargo, que todo ciudadano tenga derecho, o aún más que tenga la obligación de que cuando en su presencia se esté cometiendo o se intente cometer un delito, trate de evitar que ese delito se cometa. La instrucción dada fué, sin duda, más allá del alcance de la ley, según ha sido expuesta, y más allá también de la interpretación que debe darse a la misma. No significan esos artículos que un extraño tenga el derecho ni la obligación de intervenir para evitar que *cualquier* delito se cometa. Ellos meramente autorizan a la persona contra quien se intenta algún daño corporal, una lesión física, una agresión personal, a oponer la necesaria resistencia para impedir el daño contra su persona, pudiendo también oponerla para evitar una agresión contra algún miembro de su familia. Autorizan igualmente a un tercero a oponer la necesaria resistencia para evitar tal daño corporal a un semejante. Esto no significa, sin embargo, en manera alguna que un tercero, como lo era Cortés Chévere en este caso, pudiera intervenir para impedir la comisión de un supuesto delito de libelo. Ésa es la interpretación que damos a los artículos citados. Interpretarlos en la forma en que lo hizo el tribunal a quo equivaldría a permitir que los ciudadanos se tomaran la ley por sus propias manos. Conforme se dice en la obra Wharton *on Homicide*, 3ra. ed., a la página 776, sección 521, "una persona tiene derecho a usar violencia en defensa de otra tan sólo cuando la persona en peligro hubiera estado justificada en usarla en su propia defensa." Véase también 4 Am. Jur., pág. 155, sección 54.

Por otra parte, aunque el artículo 117 del Código de Enjuiciamiento Criminal provee que "una persona particular puede arrestar a otra: (1) por un delito público come-

tido o que se ha intentado cometer en su presencia . . . ."
en los autos no hay prueba alguna de que Cortés Chévere
tratara de efectuar un arresto.

El error cometido resultó sin duda perjudicial al acusado,
puesto que pudo llevar al ánimo de los juzgadores de hechos
el convencimiento de que Cortés Chévere al instar al acusado
y sus acompañantes para que le entregaran el cartelón estaba
en el ejercicio de un derecho reconocídole por la ley. Ello
exige la revocación de la sentencia.

Dada la conclusión a que hemos llegado, no es necesario
discutir el primer error señalado por el apelante, al efecto
de que el veredicto rendido es contrario a la prueba.

*Debe revocarse la sentencia apelada y ordenarse la celebración de un nuevo juicio.*

El Juez Presidente Sr. De Jesús no intervino.